UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA - LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MICHAEL WAGNER | * | CIVIL ACTION NO: |
| | * | |
| v. | * | JUDGE |
| | * | |
| DR. JACK HURST;              ; | * | MAGISTRATE JUDGE |
| NURSE NIKKI DAVIS; | * | |
| NURSE RAMONA POULLARD; AND | | |
| MEDICAL ADMINISTRATOR JUSTIN DEVILLE | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Mr. MICHAEL WAGNER, for all injuries incurred as a result of the actions of Defendant in deliberate indifference to constitutional rights or other causes as follows:

1.

### Jurisdiction

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" accordingly Plaintiff specifically seeks relief pursuant to 28 USC § 1983, et seq., and the Constitution of the United States for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

### EXHAUSTION

The incident is ongoing and began in December 2015 with an injury.  The refusal to provide medical treatment began in March 2016. Administrative remedies were initiated and accepted on April 19, 2016, by ALC-2016-0235 and 546.  More than 90 days has run and administrative remedies have not reach first step and/or concluded through second step, which allows Mr. Wagner to file suit.

3.

### Venue

Venue is proper pursuant to 28 USC § 1391 (b)(1)(2) in that the defendants resides

in or around Allen Parish and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

4.

Parties

**PLAINTIFF**:

**MICHAEL WAGNER** is a major who during material times herein was incarcerated in the Allen Correctional Center, DOC #401877, and who was an inmate at that facility where he sustained injuries but who is presently housed at David Wade Correctional.

5.

**DEFENDANT(S)**

**DR. JACK HURST**, a resident of the full age of majority domiciled in the Parish of Allen, State of Louisiana, and working at Allen Correctional Center and who was acting under color of state law when he failed and refused to provide medical treatment in view of a serious medical condition and who is sued in his individual capacity an who is amenable to process personal or in his absence on any employee of suitable age and discernment located at his place of employment, the Allen Correctional Center, located at 3751 Lauderdale Woodyard Road, Kinder, La 70648.

**NURSE NIKKI DAVIS**, a resident of the full age of majority domiciled in the Parish of Allen, State of Louisiana, and working at Allen Correctional Center and who was acting under color of state law when she failed and refused to provide medical treatment in view of a serious medical condition and who is sued in her individual capacity an who is amenable to process personal or in her absence on any employee of suitable age and discernment located at her place of employment, the Allen Correctional Center, located at 3751 Lauderdale Woodyard Road, Kinder, La 70648.

**NURSE RAMONA POULLARD**, a resident of the full age of majority domiciled in the Parish of Allen, State of Louisiana, and working at Allen Correctional Center and who

was acting under color of state law when she failed and refused to provide medical treatment in view of a serious medical condition and who is sued in her individual capacity an who is amenable to process personal or in her absence on any employee of suitable age and discernment located at her place of employment, the Allen Correctional Center, located at 3751 Lauderdale Woodyard Road, Kinder, La 70648.

**MEDICAL ADMINISTRATOR JUSTIN DEVILLE**, a resident of the full age of majority domiciled in the Parish of Allen, State of Louisiana, and working at Allen Correctional Center and who was acting under color of state law when he failed and refused to provide medical treatment in view of a serious medical condition and who is sued in his individual capacity an who is amenable to process personal or in his absence on any employee of suitable age and discernment located at his place of employment, the Allen Correctional Center, located at 3751 Lauderdale Woodyard Road, Kinder, La 70648.

6.

## GENERAL ALLEGATIONS

In December 2015, MICHAEL WAGNER received his injury due to there not being a ladder to get to the top bunk and there being a bar on the top bunk to get over to get into the bed.  MICHAEL WAGNER injured his back climbing into the bunk.

7.

At this time, MICHAEL WAGNER was housed in Mars unit, which is the cellblocks at Allen and there are no ladders available to get into the top bunks.  Due to the lack of a ladder, MICHAEL WAGNER was forced to climb the bars or jump from a desk on an adjacent wall. Even climbing the bars required that MICHAEL WAGNER had to twist in an awkward manner to get over the piece of metal that is welded to the end of the bed. The injury is a direct result of all this.

8.

On December 29, 2015, MICHAEL WAGNER completed his first sick call, and was

3

charged $3.00.  MICHAEL WAGNER was seen by Nurse Travis. At his medical sick call, MICHAEL WAGNER informed Nurse Travis that he was having pain in his lower spinal cord that in turn, caused his left leg to feel as though it is asleep. Nurse Travis referred him to the Nurse Practitioner, but unfortunately, she never saw him, and he was never seen by anyone.

9.

Later on, when the Medical Administrator Justin DeVille called him to ask him to drop the grievance, Nurse DeVille explained that MICHAEL WAGNER was not seen for the referral because the Nurse Practitioner resigned and Allen Correctional Center did not have a health care provider. At this time in December of 2015, MICHAEL WAGNER  was still able to walk and get around.

10.

In March 2016, the back pain was unbearable, and MICHAEL WAGNER was walking with a bad limp. On March 24, 2016, MICHAEL WAGNER completed an Emergency Sick Call and was charged another $8.00.  MICHAEL WAGNER wrote that he was having chronic back pain that is shooting sharp pains down his left leg.

11.

In response to the sick call, MICHAEL WAGNER was seen by Nurse Summer and was prescribed Motrin for 3 days. MICHAEL WAGNER requested to see a doctor, and she told him that a doctor would see him if he "saw fit ".   MICHAEL WAGNER requested that Nurse Summer provide him with a cane or some crutches or even a wheelchair. She told him "NO ".

12.

At this time in March 2016, MICHAEL WAGNER was housed in Jupiter Unit, which is the farthest dorm from the cafeteria and the pill call shed.

13.

On March 28, 2016, MICHAEL WAGNER returned to the infirmary and completed another Emergency Sick Call.  Again, he was charged another $7.00.  He complained that he was not able to walk due to shooting pain in his lower back to his left leg.

14.

Dr. Jack .Hurst performed an exam that consisted of a reflex hammer to his knees and a thumb tack to check for feeling.  MICHAEL WAGNER laid on his back, while Dr. Jack Hurst lifted his left leg until MICHAEL WAGNER  told Dr. Jack Hurst to "Stop!"

15.

Dr. Jack Hurst then advised, "You are the proud owner of a Herniated Disc."  A herniated disc is a serious medical condition.  Dr. Hurst was aware of the serious medical condition and symptoms being caused by the condition that suggested impingement on the spinal cord rendering it difficult to walk.

16.

Knowing that MICHAEL WAGNER had a herniated disk, Dr. Jack Hurst scheduled for an X-Ray, prescribed Naproxen and charged $2.00 for a cane.

17.

MICHAEL WAGNER requested that Dr. Jack  Hurst issue a medical order to require that MICHAEL WAGNER be moved to a dorm closer to the cafeteria and the pill call shed. Dr. Jack Hurst said he would do so, but did not do so.

18.

MICHAEL WAGNER was then sent back to Jupiter dorm from where for the next three days he went to the pill call shed in pain, but was told that there was no medicine ordered for him.

19.

On March 31, 2016, while trying to walk with a cane to the cafeteria for lunch from

Jupiter dorm, MICHAEL WAGNER legs gave out and he fell on the walk. Lt. Jackson (now Cpt. Jackson), sat with MICHAEL WAGNER while they waited for a wheelchair to bring MICHAEL WAGNER to the infirmary, where he was seen by Nurse Herbert.

20.

MICHAEL WAGNER asked Nurse Herbert to issue a wheelchair to him due to his leg giving out.  She told him that Allen Correctional did not have a wheelchair, except one for emergency purpose.  Nurse Herbert gave MICHAEL WAGNER some crutches.

21.

MICHAEL WAGNER asked to be brought to a hospital, and that request was denied.  MICHAEL WAGNER advised Nurse Herbert that Dr. Jack Hurst had prescribed pain medicine Naproxen, but that the order was never issued. Nurse Herbert checked the chart, said that it was a clerical error, and she gave MICHAEL WAGNER the medication that he was supposed to have already been receiving.

22.

On April 1, 2016, on my way back to Jupiter dorm, the pain was excruciating. Jupiter dorm was too far from the cafeteria for MICHAEL WAGNER to make it to the cafeteria.  MICHAEL WAGNER made an Emergency Sick Call. Again, he was seen by Nurse Herbert, who, again, told MICHAEL WAGNER that he could not have a wheelchair that there were none available, and she admitted him into the infirmary.

23.

On April 4, 2016, MICHAEL WAGNER, again, saw Dr. Jack Hurst, who again performed the reflex hammer exam. This time it was worse.  MICHAEL WAGNER begged Dr. Jack Hurst to please send him to the hospital.  Dr. Jack Hurst responded, "NO." Dr. Jack Hurst said he would send MICHAEL WAGNER for a C/T Scan, which is a form of x-ray.  Dr. Jack Hurst also said that MICHAEL WAGNER could stay in the Infirmary, since the Jupiter dorm was such a long distance away from everything.

24.

The same day while housed in the infirmary, Nurse Nikki Davis came into the Infirmary Housing Ward and very sarcastically and with a drawn out voice stated, "Mr Wagner, you are going back to Jupiter!"  MICHAEL WAGNER tried to speak with Dr. Jack Hurst, but Nurse Nikki Davis stopped him saying, " The doctor is having lunch; you can't speak with him." Nurse Nikki Davis physically blocked the door.

25.

Nurse Nikki Davis was advised that Dr. Jack Hurst had just told MICHAEL WAGNER that he was staying in the Infirmary.  Nurse Nikki Davis yelled, "No, you cant talk to him!"

26.

MICHAEL WAGNER knocked on Dr. Jack Hurst's door, and he answered and told MICHAEL WAGNER that the ward was for wheelchairs and serious problems. At this point, MICHAEL WAGNER could not believe what he was hearing.  Dr. Jack Hurst knew that MICHAEL WAGNER was not able to walk and that he needed a wheelchair and was having difficulty with the crutches.

27.

After being told that he could not stay in the infirmary by Dr. Jack Hurst and Nurse Nikki Davis, MICHAEL WAGNER informed both that he refused to return to the Jupiter Dormitory he told the two health care providers that he would rather go to disciplinary segregation than put himself through the unnecessary pain of trying to get to the cafeteria and the pill shed.

28.

The Nurse and Doctor had security summonsed to put the charge of aggravated disobedience on MICHAEL WAGER to have MICHAEL WAGNER locked up.  When Captain Young arrived, he saw that MICHAEL WAGNER was not able to walk to the cell block in the Mars dormitory, so he provided a wheel chair so that MICHAEL WAGNER

would not have to try to walk.

29.

On or about April 14, 2016, MICHAEL WAGNER fell in the kitchen due to the crutches, water on the floor, and a ongoing back problem. His leg gave out. MICHAEL WAGNER was brought to the Infirmary and charged another $6.00 for Emergency Sick Cali.

30.

While at the infirmary, he requested to go to the hospital, and once again, he was denied. MICHAEL WAGNER requested a wheelchair and was denied again.  MICHAEL WAGNER was becoming very upset that no one would help him, and no one cared.

31.

Nurse Ramona  told MICHAEL WAGNER that his injury and pain was his own fault, because he was in prison and that he put himself in prison.  At this point, it was clear to MICHAEL WAGNER that Nurse Nikki Davis and Dr. Jack Hurst were using MICHAEL WAGNER's pain to punish him for being a DOC inmate and that they wanted him to suffer.

32.

Nurse Nikki Davis told MICHAEL WAGNER that she did not care about his health or if he got a lawyer. Nurse Nikki Davis told him that Dr. Jack Hurst knew MICHAEL WAGNER was in the infirmary and that he did not care to speak with MICHAEL WAGNER.

33.

Nurse Ramona handed MICHAEL WAGNER a GEO headed paper, entitled, "Inmate Education on Backaches".  Nurse Ramona then sent MICHAEL WAGNER back to the dorm.

34.

MICHAEL WAGNER later received a call to the Infirmary, and upon his arrival, the Medical Administrator, Justin Deville, wanted to speak with him about the ARP that he had

filed.  The Administrator advised that this was the first time he heard of all this, but that he would speak to Dr. Jack Hurst about issuing a wheelchair, but that for some reason the doctor is refusing to treat MICHAEL WAGNER.

35.

MICHAEL WAGNER was unable to make it to the cafeteria. He was not eating and had become very weak.  He was having difficulty getting to the pill call shed to take his medication.

36.

At this point the deliberate indifference was more than apparent to MICHAEL WAGNER.  He was bing told that Dr. Jack Hurst was refusing treatment to MICHAEL WAGNER, because of my attitude.  MICHAEL WAGNER was in constant pain.

37.

The Medical Administrator advised MICHAEL WAGNER that Dr. Jack Hurst has refused to provide him with any treatment because MICHAEL WAGNER had used a curse word in the infirmary one day.

38.

On April 27, 2016, MICHAEL WAGNER was brought to Elayn Hunt Correctional Center in St. Gabriel for a C/T Scan and then returned back to Allen Correctional Center

39.

On May 5, MICHAEL WAGNER was brought to the cell block from Mercury dorm. All of his medication was discontinued by the health care providers.   On May 7, the pain was unbearable such that he attempted to hang himself in the shower cell.  Captain Jackson found him and asked him what was working and he told the Captain that he would rather die than deal with the pain.  He was placed on suicide watch.

40.

From May 7 - 10, he attempted repeatedly to make emergency sick calls.  Every

9

time the nurse came to the tier, MICHAEL WAGNER begged to be seen.  The guards logged down how he had begged for emergency sick calls to see a doctor by the nurses.

41.

On May 10, he was seen by his social worker, Scott Morgon who took him off of suicide watch.  At that point the Medical Administrator had advised Scott Morgon that Dr. Jack Hurst explained that the reason he would not treat MICHAEL WAGNER was because he had said a curse word in the infirmary.

42.

On May 10, 2016, Dr. Jack Hurst announced to MICHAEL WAGNER that he would not be providing MICHAEL WAGNER any treatment while MICHAEL WAGNER remains in the cell block.  The housing assignment at an institution should not be a factor in obtaining medical treatment.  The pain was being used by Dr. Jack Hurst as corporal punishment.

43.

On May 25, 2016, MICHAEL WAGNER fell twice coming back to his cell from the shower when his leg went numb and gave out.  MICHAEL WAGNER tried to complete an Emergency Sick Call but was not seen until May 30, 2016 and charged another $3.00.

44.

On May 26, 2016, MICHAEL WAGNER completed a Sick Call stating that the pain medication is not strong enough, that MICHAEL WAGNER was still not able to walk, and unable to stand for more than a few minutes, and that his left leg felt as though its was going to burst. I was charged another $6.00; however, nothing was done.

45.

MICHAEL WAGNER even wrote a request form to the Medical Administrator asking him to please get him an MRI.  At some point, Dr. Jack Hurst had diagnosed MICHAEL WAGNER's serious back injury as a "birth defect."  MICHAEL WAGNER did not have a

birth defect in his back.

46.

The Administrator wrote back, and his exact words were: " The result of your C/T Scan, as well as progress notes from Allen Correctional were forwarded to D.O.C. for review pending approval for further testing, such as an MRI or an Orthopedic Consult. This has been denied by D.O.C. at this time."

47.

From June 11 - July 6, MICHAEL WAGNER was not able to go to the cafeteria or the pill shed due to extreme pain and inability to walk without assistance.  The sergeants on duty repeatedly called for a wheelchair, but the infirmary refused to send the chair. MICHAEL WAGNER was very weak.

48.

On June 10, 2016, MICHAEL WAGNER  was released from the cellblocks back to Jupiter. On June 11, 2016, MICHAEL WAGNER's request for a wheelchair and was denied again.   MICHAEL WAGNER could no longer walk to the cafeteria or to the pill call shed.

49.

On June 25, 2016, Dr. Hurst told MICHAEL WAGNER that he did not care about the grievance and that he was refusing medical treatment because MICHAEL WAGNER, who was unable to walk at this time, was a very "unpresentable".  Dr. Jack Hurst advised that MICHAEL WAGNER was a person with horrible tattoos and he would did not to deal with MICHAEL WAGNER.   MICHAEL WAGNER's tattoos disgusted Dr. Jack Hurst, who advised that his mother would never allow MICHAEL WAGNER into their home.

50.

Dr. Jack Hurst advised that MICHAEL WAGNER  was a very unlikable person and that he was not going to give him a wheelchair.  Dr. Jack Hurst, abruptly changed his mind and then forced MICHAEL WAGNER to walk all the way back to Jupiter Dorm.

51.

On July 6, 2016, MICHAEL WAGNER was told by Jupiter Unit Captain that he needed a wheelchair, because he needed to start getting out of the dorm.   The Captain sent MICHAEL WAGNER to the Infirmary to get a wheel chair.

52.

Nurse Nikki Davis and Dr. Jack Hurst refused one again.

53.

On July 6, Jupiter Unite Captain Sonnier authorized the sue of a trash cart that Kevin Necaise could use to pull MICHAEL WAGNER to the cafeteria, because the infirmary would not send the wheel chair.  MICHAEL WAGNER was pulled around the facility form July 6 - August 1, 2016, in a trash cart.

54.

MICHAEL WAGNER completed multiple sick calls that were ignored.

55.

Nurse Nikki Davis and Dr. Jack Hurst were terminated from Allen Correctional.  On August 1, MICHAEL WAGNER was seen by Dr. Chatman.

56.

On August 8, he again fell on the kitchen floor and requested to be brought to the hospital, which request was denied.  On August 111, in the Mars dorm, he again attempted suicide to escape the pain. Once again, he was placed on suicide watch.

57.

On August 12,, he was brought to EHCC to see an orthopedic consult and pain management clinic.  EHCC security would not allow him to see the doctor, because he was on suicide watch.  He was returned to Allen.

58.

On August 15, he fell in the shower and was brought to the infirmary and examined

by Nurse Ramona.  She noted the bruise on the tail bone.  He requested to go to the hospital and see an outside doctor.  Nurse Ramona told him that he is not I the regular world where he can get the treatment he wants and that he is in prison and nothing will be done.

59.

On August 17, Dr. Wakefield the psychologist saw him about getting off of suicide watch and he said, he had a meeting with Medical Administrator Justin Deville and Warden Allemonde and that he was informed that Allen would not treat him.  To get treatment, he would have to be transferred.

60.

MICHAEL WAGNER was in severe constant pain form Aug 22-25 and he tried to make emergency sick call twice a day.

.                                    61.

On August 22, he told the sergeants that he wanted to make an emergency sick call and he was told that the infirmary advised that he would see the doctor on August 23, but that did not happened.   He told the same sergeants on August 23, that he wanted to make sick call.  The sergeants said the infirmary told them its was only for chronic pain, so no one came.

62.

On August 24, when Nurse Ramona came to his cell for pill call, MICHAEL WAGNER inquired of her as to whether she had been turning in his sick calls.  Nurse Ramona told him that he was scheduled for tow sick all appointments that he needed to stop crying like a bitch.  She told the inmates, "That white boy needs an attitude adjustment."  As she was leaving she said, "Remember, as long as I'm here, you will suffer and no one else will see you.

63.

On August 25, a sergeant came to his cell and said Nurse Porsha Jackson is here to see you.  MICHAEL WAGNER advised that he was not able to move without a wheelchair.  Nurse Jackson told the Sargent that if MICHAEL WAGNER was not able to walk into there, he would not be seen.  Nurse Jackson left Mars dormitory.

64.

ON August 26, MICHAEL WAGNER could not move and was stuck in a chair in the shower.  A sergeant called the infirmary and demanded that someone see MICHAEL WAGNER.  Dr. Chatman had MICHAEL WAGNER brought to the infirmary in a wheel chair.  He found the condition to be very serious and he made a phone call.

65.

On August 29, 2016, MICHAEL WAGNER was transferred to DWCC.

66.

MICHAEL WAGNER is 37 years old and was in good health prior to the back injury. At this point, it seems that not only is the damage permanent damage, but that is getting worse.

67.

Defendants were well aware that MICHAEL WAGNER had a serious medical condition and that he needed to be have proper diagnostic testing, be on medication and to go to the emergency room immediately, but they refused to send him or authorize same.

68.

All Defendants were well aware of Plaintiff's continuous serious condition the entire time, but they refused to provide a wheelchair.

69.

All Defendants denied MICHAEL WAGNER access to a hospital to see a medical doctor.

70.

Defendants took no action to provide appropriate or any emergency medical care.

71.

Each of the Defendants was aware of the serious medical condition and each did nothing and in fact made the pain worse.

72.

The action of DEFENDANTS violated Louisiana law, La. DOC and Allen Correctional Center medical policy and practice in place to protect and pertaining to Medical Care available to inmates.

73.

Louisiana Administrative Code Title 22, Part III, § 2909, entitled *Medical and Health Care* provides as follows:

A. A licensed physician shall be responsible for the health care program and for the practice of medicine in the institution, and no restrictions shall be placed on the medical judgment of the physician.

B. All health care shall be provided in accordance with written policies and procedures developed by the physician in charge and endorsed by the administrator.

D. Treatment given by other than a licensed physician shall be made by trained personnel according to written, standing or direct orders of the physician in charge.

E. Inmates shall have continuous access to emergency health care by trained personnel and professional medical attention whenever required.

F. Inmates shall have access to routine health care by a physician within 48 hours after making such request.

L. Inmates shall be able to report illness or health complaints daily and all reports shall be recorded together with complaint disposition.

74.

These statutory rights were denied by the Defendants to MICHAEL WAGNER.

75.

Defendants exhibited and acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights of an inmate confined to prison.

76.

The Constitution, statutes, rules and regulations enacted to protect inmates were disregarded.

77.

La. R.S. 15:829, which allows the Secretary of the Louisiana Department of Public Safety and Corrections to enact rules and regulations governing inmates and guards, provides that corporal punishment of inmates is forbidden. See also, lac 22:3309 (B) and see Department Regulation No. c-02-006 (6)(b)(c)(d).

> A. The secretary of the Department of Public safety and Corrections shall prescribe rules and regulations for the maintenance of good order and discipline for inmates sentenced to the legal custody of the department whether housed in local or state facilities, which rules and regulations shall include procedures for dealing with violations thereof. A copy of such rules and regulations shall be furnished each inmate. **Corporal punishment is prohibited.**

78.

Intentionally causing an inmate to suffer who has a serious medical condition and no resort to medical assistance other than the prison is per se unreasonable behavior.

79.

The following claims for relief are pled collectively and in the alternative.

80.

**INJURIES**

The Plaintiff suffered acute physical, mental and emotional injury for which he has sought or should seek and received treatment.

16

81.

## FIRST CLAIM FOR RELIEF
## SECTION 1983 VIOLATION OF CIVIL RIGHTS
## DENIAL OF MEDICAL TREATMENT

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

82.

Due process requires that persons imprisoned are entitled to adequate medical treatment.

83.

Defendant violated MR. MICHAEL WAGNER's 8th Amendment right as an inmate to be free from cruel and unusual punishment pursuant to 42 USC § 1983.  By refusing medical treatment and/or to provide adequate treatment and access to medical facilities, Defendant(s) exceeded constitutional limitations that arose under circumstances that constitute an usual and recurring situation with which a police officer must deal.  Failure and lengthy delays in medical treatment demonstrates a deliberate indifference to a serious medical need on the part of persons charged with the well being of inmates toward the inmate and there is a direct causal link between the constitutional deprivation and the suffering of MR. MICHAEL WAGNER.

84.

## COSTS AND ATTORNEY FEES

Plaintiffs seek relief in the form of attorney's fees and cost pursuant to 42 USC § 1988 and punitive damages pursuant to 28 USC § 1983 and the 28 USC § 2671 et seq. or any other applicable statute.

17

85.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

In the alternative, the DEFENDANT knew or should have known that failure to treat would cause serious personal injury particularly where as here the inmate had a herniated disk in his back that was affecting his ability to walk and where in view of this medical condition, Defendants denied him access to medical treatment and continue to deny treatment and medication.

86.

Plaintiff seeks relief under La. C.C. arts. 2315 of the Louisiana Civil Code, which injuries were occasioned by the intentional and/or negligent acts and/or omissions of the Defendant(s) herein.

87.

## REQUEST FOR JURY TRIAL

Plaintiff prays for a jury trial on all issues.

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiff against the Defendants with legal interest from the date of demand as follows:

a.     Severe bodily injuries;

b.     Medical and pharmaceutical expenses and/or lien - past, present, and future;

c.     Disability;

d.     Pain and suffering-past present and future;

e.     Mental anguish and emotional distress-past present and future;

f.     Loss of earning capacity/lose of future wages;

g.     Disfigurement;

h.      Inconvenience;

i.      Loss of ability to participate in normal activities;

j.      All litigation expenses;

k.      For attorneys fees and for costs as may be allowable by law;

l.      For such other relief that the Court may deem just, equitable, or proper.

                                    Respectfully submitted:

                                    /s Donna Grodner
                                    Donna U. Grodner (20840)
                                    GRODNER LAW FIRM
                                    2223 Quail Run, B-1
                                    Baton Rouge, Louisiana 70808
                                    (225) 769-1919 FAX 769-1997
                                    dgrodner@grodnerlaw.com